TOWN OF JAMESTOWN *vs.* MORTIMER W. NEWTON, *Public Utility Administrator.*

MARCH 8, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J.  This is an appeal by the town of Jamestown from the order of the public utility administrator ordering the Jamestown Water Company to file a new schedule of increased rates and charges for the sale of water in the town sufficient to provide annual revenues of $62,960 to the company.

On July 2, 1959 the company filed a revised tariff of increased rates and charges designed to produce revenue from the sale of water in the approximate amount of $73,034 annually.  Pursuant to the provisions of G. L. 1956, §39-3-11, the administrator suspended the proposed tariff pending his investigation and a public hearing.  After the hearings the administrator denied and dismissed the tariff filed by the company and in place thereof ordered it to file revised rates and charges for water service designed to produce revenue from water sales in the approximate amount of $62,960 an-

nually, an increase of approximately 24 per cent over its existing tariff.

The company has not appealed from such order. The only appeal before us is that of the town of Jamestown. It contends that the rates fixed by the administrator in the report and order dated August 29, 1961 are unjust and unreasonable and therefore unlawful under the provisions of §39-2-1.

During the calendar year 1960 the company serviced a maximum of 863 metered customers. It is the only public utility supplying water in the town and services most of the town's inhabitants. It also sells water to the town for fire protection and other municipal uses. Its plant facilities consist of two storage reservoirs, Carr's Pond and Watson's Pond; a filter plant; a pumping station; a standpipe; and water mains totaling approximately fifteen miles.

At the hearings before the administrator the company contended that its existing rates and charges were inadequate to provide sufficient revenue to defray operating and maintenance costs and to furnish it with a reasonable rate of return on the value of its properties dedicated to the public service. It offered in evidence certain exhibits and testimony relating to the accounting, engineering and financial aspects of its operations. It established a rate base, as of December 31, 1958, of $190,800, and provided for a rate of return thereon of 6 per cent. It estimated its average operating expenses for the immediate future at $43,600 annually and, after taking into consideration depreciation, taxes (except federal income), and debt charges, determined that its revenue requirement from water sales for the immediate future was $73,034 annually.

In support of its objection to the company's tariff filing the town presented the testimony of Robert J. Armstrong, a certified public accountant. On the basis of the exhibits in evidence and of his examination of the company records, he testified that a rate base of $136,760.79 should be adopt-

ed. He arrived at this figure by excluding the cost of a new standpipe amounting to approximately $39,776, and by including an additional accrued depreciation of $8,957, together with a smaller allowance for working capital in the sum of $5,300. After making certain adjustments relating to the company's operating expenses and to the items of depreciation, taxes (except federal income), and debt charges, he concluded that the total required for such items would be $10,320 less than the total included in the company's proposed tariff filing.

In addition to the tariff filed by the company and to the suggestions made by the town, the administrator had before him a schedule prepared and presented in evidence by Ambrose W. Coogan for the staff of the division of public utilities. Mr. Coogan estimated the company's rate base as of December 31, 1959, at $150,358.78. The administrator found that this rate base "most correctly" represented the factual depreciated investment plus a reasonable allowance for materials and supplies and cash working capital for the most recent period of time available. He therefore rejected the rate base proposed by the company and the one suggested by the town and concluded that a rate base of $150,-358.78 was reasonable.

With respect to the question of the company's revenue requirement, the administrator estimated that the net earnings on the company's rate base in the immediate future should be approximately $11,375, a rate of return of 6½ per cent. After determining what he considered were reasonable charges for depreciation, debt charges and taxes (except federal income taxes), he found that the company should be permitted to revise its existing rates and charges so that it could receive revenue from water sales of approximately $62,960 annually. On the basis of such findings the administrator thereafter entered the report and order from which the town has duly filed a petition of appeal.

The town has set out twenty-six reasons of appeal, but has briefed and argued them under one main point and two subsidiary points. The town's main contention is, as we have already stated, that the report and order of the administrator fixed rates which are unjust and unreasonable and therefore unlawful under §39-2-1. It argues its main contention under the two subsidiary questions which it has raised.

Under the first subsidiary point it contends that the administrator committed error in including in the rate base which he allowed in his report and order property of the company which is not necessary to be employed in rendering the public service of supplying water to the town and its inhabitants. It refers to four items which it claims the administrator unlawfully included in the rate base.

The first of these is the company's standpipe. The town contends that the administrator allowed in the rate base the cost of a new standpipe, but that there is no substantial evidence of the need of replacing the existing standpipe. The record does not support the town's contention on this issue.

After determining that a rate base of $150,358.78, as of December 31, 1959, was reasonable, the administrator explained how he had arrived at a return of $11,375 on the rate base. He stated that he had given consideration to the fact that the company would need to expend substantial sums of money in the immediate future for the rebuilding or replacement of its existing standpipe which was then in a dangerous condition and that it had the additional need of accelerating its maintenance program to offset the deferred maintenance which had occurred during recent years.

The administrator stated that it was upon the basis of these considerations that he found that the company's revenue requirement in the immediate future would approximate $64,360. In estimating that the net earnings on the company's rate base should be approximately $11,375, he

stated that he had taken into consideration the necessity for the company to spend approximately $25,000 for capital improvements on its standpipe and for the purchase of other needed plant equipment. To enable it to make these capital improvements in the immediate future, he allowed the company a rate of return not only on its base as of December 31, 1959, but also made provision for a rate of return for the $25,000 of capital improvements. In so doing, he computed the cost of capital on the basis of approximately $175,000.

The property in question was used, useful and necessary in rendering water service. A careful examination of the record shows that there is evidence of an immediate need for such capital improvements. The question of the weight of such evidence was for the administrator to determine. In the circumstances we cannot say that the inclusion of a rate of return on the money needed for such capital improvements was unjust or unreasonable. In our opinion the action of the administrator is not inconsistent with the decisions of this court in *Public Utilities Comm'n* v. *East Providence Water Co.,* 48 R. I. 376, *Town of Narragansett* v. *Kennelly,* 83 R. I. 191, and *Narragansett Electric Co.* v. *Kennelly,* 88 R. I. 56.

The administrator was dealing with capital improvements which, on the basis of the evidence before him, he determined had to be made in the immediate future. In our opinion he did not err by including an allowance of this character in the instant report and order because of the immediate need. See *City of Ft. Smith* v. *Southwestern Bell Tel. Co.,* 220 Ark. 70, 81.

The town next contends that the administrator committed prejudicial error by including Watson's Pond in the rate base. It bases this claim on the administrator's statement that: "At the present time, Watson's Pond is not used as a source of water, and the Company relies solely on the water stored at Carr's Pond to supply customers."

If this statement is interpreted to mean that Watson's Pond has been completely abandoned and is no longer used or useful, we would agree that it should have been excluded from the rate base. However, a careful reading of the record indicates that although it is not primarily used as a source of supplying water to customers at the present time, it is an integral part of the water system and has been used at times and is useful in furnishing water service. There is no evidence in the record that Watson's Pond is not needed. On the view that we take of the administrator's statement, in the context of the entire record, we cannot say that he erred by including Watson's Pond in the rate base. *Town of Narragansett* v. *Kennelly, supra,* is not in point, factually, on this issue.

The record does not support the town's contention that the administrator included in the rate base the cost of increasing the size of Carr's Pond to accommodate an additional million gallons to supply the military establishments in the town. This claim requires no further discussion.

We have carefully considered the town's contention that the company plant is greatly oversized and that the administrator erred in failing to reduce the rate base accordingly. The burden is on the town, as the appellant, to show wherein the administrator has erred on this issue. *Town of Middletown* v. *Newport Water Corp.,* 53 R. I. 435. It is true that the evidence shows that during a certain period of time in the past, due in large measure to military installations in the town, the company supplied more water than it does presently, but it does not necessarily follow that for such reason the company is oversized. In any event, it is our opinion that the town has failed to sustain its burden of showing that the administrator erred.

Under its second subsidiary point the town contends that the administrator erred in his computation of the company's revenue requirement in that he failed to consider certain practices carried on by the owners of the company. The

town refers to certain transactions involving the purchase and sale of securities, to a management contract between the water company and E. R. Davenport & Co., and to certain other practices involving the owners and employees of the company.

We have examined all of the town's claims with care. Repetition will serve no useful purpose. We are convinced that in determining the revenue requirement the administrator took all of these factors into consideration. He notified the company to discontinue those practices which he deemed to be against the public interest. With respect to the management contract between the company and Davenport, he decreased the management fee from $6,000 to $3,-000. We are not convinced that he overlooked any of the practices about which the town complains.

In our opinion his findings are supported by substantial evidence. He rejected the company's filing and fixed new rates on the basis of the evidence before him. In such circumstances the town as the appellant has the burden of showing that the administrator's order should be set aside. *Town of Middletown* v. *Newport Water Corp., supra.* Such an order is entitled to great weight and will be set aside only when clearly unreasonable, illegal, or improper, and prejudicial to appellant, or in excess of the administrator's authority. *Town of Jamestown* v. *Kennelly,* 81 R. I. 177. In the case at bar the town, as the appellant, has not sustained the burden of convincing this court that the increased rates allowed by the administrator are unjust or unreasonable.

The order of the public utility administrator is affirmed and the appeal therefrom is denied and dismissed.

*Letts & Quinn, Daniel J. Murray, Seth K. Gifford,* for Town of Jamestown.

*Joseph J. Nicholson,* for Jamestown Water Company.